Filed 3/9/16  P. v. Lawless CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KRISTOPHER WILLIAM LAWLESS,<br><br>  Defendant and Appellant. | F069596<br><br>(Super. Ct. No. BF144935A)<br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P.J., Gomes, J. and Franson, J.

## FACTS AND PROCEDURAL HISTORY[1]

On October 29, 2012, Kristopher William Lawless (defendant) began accusing his girlfriend, who had lived with him for about three months, of stealing money and pills from him.[2] When she denied taking his property, he struck her on the head with a glass vase filled with glass marbles, then punched her until she lost consciousness. When she woke, she was tied up in a tent in the spare bedroom. Defendant continued to accuse her of stealing, and stated he would kill her if she did not return his money and drugs. Defendant threatened to slit her throat, then stabbed her in the neck and lower lip. Over the next two days, defendant bit her, burned her with a gas torch he used to smoke methamphetamine, and repeatedly choked her with a rope almost to the point of unconsciousness. She was finally able to escape on the evening of October 31, 2012, when defendant untied her because it was her birthday. Defendant was arrested; he then made several phone calls from jail to various people — including his mother — threatening to harm them if they did not help him stop the victim from talking.

At defendant's first trial, a jury convicted him of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 7), possession of drug paraphernalia (*id*., former § 11364.1; count 8), and leaving the scene of an accident where property was damaged (Veh. Code, § 20002, subd. (a); count 10). Jurors acquitted him of, or were unable to reach a verdict on, multiple charges related to his conduct toward the victim.

In anticipation of a retrial, which began March 4, 2014, the People filed an amended information, charging defendant with torture (Pen. Code,[3] § 206; count 1), willful infliction of corporal injury on a cohabitant with the personal infliction of great

---

[1] The facts of the underlying offenses are taken from the probation officer's report.

[2] According to the victim, defendant used and sold pills and methamphetamine, and had marijuana growing in his spare bedroom.

[3] Further statutory references are to the Penal Code unless otherwise stated.

bodily injury under circumstances involving domestic violence (§§ 273.5, subd. (a), 12022.7, subd. (e); count 2), and battery on a cohabitant (§ 243, subd. (e)(1); count 3). Although each party initially rejected the other's plea offers, on March 10, 2014, a plea agreement was reached whereby defendant agreed to plead no contest to willful infliction of corporal injury on a cohabitant in violation of section 273.5, subdivision (a); and a new count, witness dissuasion in violation of section 136.1, subdivision (b)(2), a strike offense.[4] In return, defendant was to receive a sentence of four years eight months in prison, to be served concurrently with his prior conviction, and a 10-year stay-away order would be imposed with respect to the victim.

Under questioning by the trial court, defendant confirmed he initialed and signed the "Felony Advisement of Rights, Waiver and Plea Form," which defense counsel also signed. Defendant further confirmed he was "feeling all right," had no medical condition of which the court should be aware, had not taken any type of medication that deprived him of his faculties, and understood what was going on. The court and defense counsel advised defendant, on the record, of the consequences of pleading no contest to a strike offense, including what could happen if he was not a citizen (§ 1016.5), and defendant confirmed he was entering the plea freely and voluntarily, understood the nature of the charges and possible pleas and defenses, and had had enough time to discuss his case and the plea with defense counsel. Defendant then waived his constitutional rights pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122. The court found defendant voluntarily and intelligently waived his rights, and fully understood the nature of the offenses to which he was about to enter his plea and the consequences flowing from that plea. The parties stipulated there was a factual basis for the plea based

---

**4** Although the offense was a serious felony under section 1192.7, subdivision (c)(37), it was not a violent felony as defined in section 667.5, subdivision (c). Accordingly, defendant was eligible to earn credit at the rate of 50 percent (see §§ 2933, 2933.1, subd. (a)), and defendant was so informed.

on the offense reports, preliminary hearing transcript, defendant's prior record, and the proceedings and evidence from the first trial. Defendant then pled no contest as provided by the plea agreement, and the remaining charges were dismissed on condition the plea remain in full force and effect. The court found the plea was freely, knowingly, and voluntarily made.

Sentencing was set for April 8, 2014. On that date, defense counsel (Paul Cadman) declared a conflict and asked to withdraw as defendant's attorney. In addition, defendant moved to withdraw his plea. The court granted Cadman's request, appointed new counsel (Fred Gagliardini) for defendant, and continued the matter. On April 11, 2014, Gagliardini declared a doubt as to defendant's competence (§ 1368), a doctor was appointed to examine defendant, and criminal proceedings were suspended. On May 9, 2014, defendant was found competent, criminal proceedings were reinstated, and sentencing was set for May 29, 2014.

On May 14, 2014, defendant filed a written motion to withdraw his plea. Defendant asserted he was receiving psychotropic medications during his first trial, which, for some unknown reason, were withdrawn prior to his second trial and remained withdrawn when he changed his plea. Defendant claimed he was confronted with the plea offer at a time when he was unable to cope with the complexity of a second trial involving new witnesses and an offer he previously had rejected, and that Cadman had been unaware of these circumstances.[5] The People opposed the motion.

At the hearing on the motion, defendant stated he wished to address the court. The court advised him of his rights and had him consult with his attorney, but, against Gagliardini's advice, defendant insisted on being sworn and taking the stand. Defendant then proceeded to cite the court to the Declaration of Independence, and asserted a

---

**5** The clerk's transcript contains a redacted version of the motion to withdraw the plea. The original unredacted motion was sealed upon order of the trial court. We have reviewed it.

4.

number of his constitutional rights, including those under the Fourth, Fifth, Eighth, and Fourteenth Amendments, had been violated. Defendant also claimed Cadman had extorted him by saying if defendant did not take the offer, he would get a life sentence, and that if he filed a motion for a new attorney, it would be "suicide."[6]

With respect to the day he changed his plea, defendant testified, under cross-examination by the prosecutor, that he had no trouble getting up, getting ready for court, or following deputies' directions. When he spoke to Cadman about a plea deal, Cadman told him the court was going to try to slander him. Defendant acknowledged Cadman made him aware that certain evidentiary issues, such as defendant's prior incident involving prostitution, might become relevant in the second trial. Defendant recalled the prosecutor saying she was not going to use the pictures from that incident. Defendant denied reading the paperwork for the plea, but simply initialed where Cadman told him. He admitted knowing, however, that he was signing his name and taking a plea deal, and he recalled the court advising him of the rights he was giving up.

Defendant further testified he had been taking his medications for a year and a half, then, sometime in February, the jail stopped giving them to him for no apparent reason. The psychiatrist told him it was in his best interests not to take them anymore. As a result of being denied his own prescription, defendant took someone else's medication. The medication was an antidepressant. Defendant admitted that on the day of the plea and the day after, when he was again in court on this case, he never advised anyone of the problem with his medications.

At the conclusion of defendant's testimony, the trial court found there had been a limited waiver of the attorney-client privilege, and permitted circumscribed questioning of Cadman. Cadman testified he advised defendant he (defendant) was facing a life term, but he denied threatening defendant. Cadman did not tell defendant it would be "suicide"

---

[6] Defendant acknowledged the torture charge carried a life sentence. (§ 206.1.)

5.

to get another attorney, although he made it clear he thought he was the attorney most qualified to handle the retrial because he was intimately familiar with the case, having handled the first trial, and he opined the next attorney would not be as qualified.

Cadman testified that on the day of the plea, defendant was agitated, but not incompetent. Cadman went over the waiver of rights with defendant. Cadman never said defendant was going to get life if he did not accept the plea, although he made sure defendant was aware the risk in the retrial was greater than in the first trial because of a change in witnesses. In Cadman's opinion, although defendant was reluctant to accept the negotiated plea, defendant understood it. Cadman never got the indication something "wasn't right." Cadman did not recall defendant saying anything about not being provided medication at the jail. Had defendant done so, it would have been "a red flag," and Cadman would have made a note of the conversation.

After argument and reviewing the court file, the trial court found no actions by the prosecutor or Cadman to force any plea upon defendant. The court noted the questions it had asked defendant, at the outset of the change of plea proceeding, about his health and whether he was able to understand what was going on, and found no evidence demonstrating defendant's alleged mental health issues in any way affected his ability to enter the plea freely and voluntarily. The court further found defendant did not bring to the court's or Cadman's attention that he was having any issues, and there was no credible evidence to show defendant lacked independent and clear judgment in entering the plea. Accordingly, the court denied the motion to withdraw the plea.

The court then proceeded to sentence defendant. It found no circumstances in mitigation and multiple aggravating factors, and sentenced defendant to a total fixed term of four years eight months in prison, in accord with the plea agreement. It ordered defendant to pay restitution to the victim and to the restitution fund in an amount to be determined by the probation department, at the direction of the court (§ 1202.4, subd. (f)); restrained defendant from all contact with the victim for 10 years (§ 273.5, subd. (i)); and

imposed a $280 restitution fine (§ 1202.4, subd. (b)), a $280 restitution fine that was suspended subject to parole or postrelease supervision revocation proceedings (§ 1202.45), an aggregate $80 court security fee (§ 1465.8), and an aggregate $60 court facilities funding assessment (Gov. Code, § 70373).  The court awarded defendant 1,149 days of credit (575 actual days plus 574 days of conduct credit).

Defendant filed a timely notice of appeal and obtained a certificate of probable cause.

## APPELLATE COURT REVIEW

Defendant's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently.  (*People v. Wende* (1979) 25 Cal.3d 436.)  The opening brief also includes the declaration of appellate counsel, stating defendant was advised he could file his own brief with this court.  By letter dated April 8, 2015, we invited defendant to submit additional briefing.  To date, he has not done so.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.